**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| WILLIAM HOSKIN individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>        v.<br><br>PEPSICO, INC.,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff William Hoskin ("Plaintiff"), individually and behalf of all others similarly situated, brings this class action against Defendant PepsiCo, Inc. ("Defendant" or "Pepsi"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in possessing, collecting, capturing, storing, using, and/or otherwise obtaining his and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics")—specifically, Plaintiff's voiceprints—without obtaining informed written consent or providing or complying with the requisite data retention and destruction policies, in direct violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, voiceprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

2.      The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/15(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

3.      In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that collects, captures, purchases, receives, stores, uses, or otherwise obtains biometrics must first (i) inform individuals in writing that biometrics are being collected, (ii) inform individuals in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (iii) procure a written release from individuals authorizing the collection of biometrics.  740 ILCS 14/15(b).

4.      Moreover, private entities like Defendant that possess biometrics must publish a publicly available retention schedule and guidelines for permanently destroying biometrics, as well as comply with those guidelines.  *See* 740 ILCS 14/15(a).

5.      In direct violation of each of the foregoing provisions of BIPA §§ 15(a) and 15(b), Defendant possessed, collected, captured, stored used, or otherwise obtained—without first providing notice, obtaining informed written consent or publishing data retention policies—the voiceprints and associated personally identifying information of thousands of its employees (and

former employees), called "pickers,"[3] who are being required to utilize voice recognition software as they pick and package items customers have purchased.

6.     Plaintiff William Hoskin worked as an hourly employee at a Pepsi distribution center located on 35th Street in Chicago, Illinois, as an order "picker" from approximately July 2010 to August 2018.

7.     When Plaintiff worked as a picker, Defendant possessed, collected, captured, stored, used, and/or otherwise obtained his biometrics through its requirement that pickers use Honeywell's Vocollect Solutions technology.

8.     BIPA confers on Plaintiff and all other similarly situated Illinois residents a right to know of the risks that are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist after using voice recognition software at one of Pepsi's distribution centers.

9.     Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper and lackluster collection, storage, usage, and protection of Pepsi's employees' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of

---

[3] "Pickers" are warehouse workers who fill orders for customers by selecting items from storage bins or shelves and then getting them ready for shipment usually by placing them on pallets, and ultimately bringing them to a shipping door for another employee to load the items onto trucks.

the proposed class is citizen of state different from at least one Defendant.

11.     This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

13.     Plaintiff is, at all relevant times, a resident and citizen of Illinois.

14.     Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business at 700 Anderson Hill Road, Purchase, New York 10577.  Pepsi owns and operates the relevant distribution facility in Chicago, Illinois, as well as other distribution facilities throughout the State of Illinois.

## FACTUAL BACKGROUND

**I.     Illinois' Biometric Information Privacy Act**

15.     The use of biometric voiceprint technology in the workplace by its nature involves serious risks.  Unlike other methods of identification, one's voice is a permanent, unique biometric identifier associated with an individual.  This exposes individuals to serious and irreversible privacy risks.  For example, if a device or database containing individuals' voiceprints is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

16.     Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as voiceprints. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

17.     BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

> (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

18.     Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

19.     As alleged below, Defendant violated these provisions of BIPA when it possessed, collected, captured, stored, used, or otherwise obtained its employees' biometrics without adhering to BIPA's safeguards.

## II.     Defendant Violates Illinois' Biometric Information Privacy Act

### A.     Overview Of The Vocollect Technology

20.     Honeywell International Inc. ("Honeywell") develops, manufactures, and sells voice picking technology under its "Honeywell Voice" brand.

21.     Under the Honeywell Voice brand, Honeywell sells various headsets and voice recognition devices.   As relevant here, Honeywell sells the Honeywell Voice SRX Series Bluetooth Wireless Headset" (the "Headset") and the Honeywell Voice A700x Series Mobile Device (the "Mobile Device") (collectively, the "Vocollect Technology"):



*Honeywell Voice SRX Bluetooth Wireless Headset (Model SRX2)*



*Honeywell Voice A700x Series Mobile Device (All Models)*

22.     The Headset is obviously worn by a picker on the head/ear, while the Mobile Device can be clipped to a picker's belt.  The Mobile Device works in conjunction with the Headset.

23.     For all relevant purposes, each model of the Headset (*e.g.*, SRX2 or SRX3) works identically to one another, and each model of the Mobile Device (*e.g.*, A720X, A720x, or A730x) works identically to one another.

24.     Honeywell touts the voice recognition capabilities of the Vocollect Technology on its website.  For instance, as to the Headset, Honeywell states that "[w]ith Honeywell Voice SoundSense™ *voice recognition technology*, the SRX2 wireless headset gives you the highest levels of accuracy and performance," and that the Headset's "*Advanced Speech Recognition*

*Protocol* ensures zero loss of speech and audio information, unlike consumer Bluetooth headsets."[4]

25.     Similarly, for the Mobile Device, Honeywell includes a sales video in which Lori Pike, Honeywell's Engineering Director for Honeywell Voice, states:

> [W]hat happens with our speech recognition, which is done on the device, we have the worker train templates, and that's just a fancy way of saying we're collecting how they speak.  So when they go through a workflow, and they're in a place where they have to confirm … a check digit, which are just numbers signifying 'I'm at the right spot,' we know what they said. Our accuracy just shoots through the roof compared to other products because we have this trained recognizer.[5]



26.     Ms. Pike goes on to note:

> Why speaker dependence is key with a lot of our customers is we train the words of how you speak them.  So you may have different accents, dialects,

---

[4] Honeywell Voice SRX2 Bluetooth Wireless Headset, https://sps.honeywell.com/us/en/products/productivity/voice-automated-solutions/voice-devices-and-headsets/honeywell-voice-srx2-bluetooth-wireless-headset (emphasis added).

[5] Get Workers Started Quicker with Voice, https://share.vidyard.com/watch/aSFCjCkTY4bLpFKtGaYiBu? (emphasis added).

someone could see "one" and in Spanish say "uno," so it really gives you flexibility, but also gives you a higher quality *because its tailored to how the worker uses and speaks.*[6]



27.    Similarly, Honeywell touts the features of the Vocollect Technology in a brochure available to prospective clients of Honeywell.[7]  For instance, HoneyWell describes its Vocollect VoiceCatalyst Voice Software—which is used in both the Headset and the Mobile Device—as follows:

Vocollect VoiceCatalyst enables unparalleled connectivity to devices, servers, and information and provides the launching point for implementing voice-enabled operations to achieve the highest levels of productivity. *Superior speech recognition with Vocollect BlueStreak personalized recognition* is what makes Honeywell the #1 choice for voice solutions that power eyes-free, hands-free work by mobile workers. Vocollect VoiceCatalyst offers multiple language and enhanced dialect support to personalize the user experience. *And it gets smarter over time, thanks to Vocollect Adaptive Speech Recognition, which improves recognition of*

---

[6] *Id.* (emphasis added).

[7] OPTIMIZE YOUR WORKFLOW PERFORMANCE WITH VOICE, https://www.albatech.rs/wp-content/uploads/2016/12/Honeywell-Vocollect-Solutions-Brochure-US-English-March-2015.pdf

*your workers the more they use Vocollect VoiceCatalyst.*[8]

28.     As to the technology mentioned above, Vocollect Bluestreak "is a speaker-dependent voice recognizer.  Each speaker has his or her own templates and must train those templates."  In order to create these templates, "[e]ach user is required to undergo enrollment training on templates.  The recognizer compares the words spoken with the trained words to determine what was said."  Vocollect Bluestreak "is available for all devices that support VoiceCatalyst and VoiceClient," such as the Headset and Mobile Device.[9]

29.     Vocollect Bluestreak works in tandem with the other technology mentioned above, Vocollect Adaptive Speech Recognition.  Vocollect Adaptive Speech Recognition "means that as the worker uses the system over time, the recognizer uses samples of his or her speech in different environments, at different volumes, and so on to automatically update the worker's templates [created on Vocollect Bluestreak] to account for these changes in speaking patterns.  This feature allows recognition to increase the more the worker uses the system."[10]

30.     The long and short of these allegations is that the Vocollect Technology is not simply recording a user's voice.  Rather, the Vocollect Technology is creating a biometric identifier—a voiceprint—specifically tailored to a user, and a user using the Vocollect Technology is able to be identified through their voiceprint.

---

[8] *Id.* at 5 (emphasis added)

[9] BLUESTREAK SPEECH RECOGNITION, https://help.honeywellaidc.com/Software/SpeechRecognition/Content/Bluestreak/BluestreakIntro.htm.

[10] HONEYWELL ADAPTIVE SPEECH RECOGNITION FEATURE, https://help.honeywellaidc.com/Software/SpeechRecognition/Content/Bluestreak/SRG_recognition_features.htm.

31.     Indeed, Honeywell makes this transparent by stating that its Vocollect Technology allows employers to "[c]ollect, [a]nalyze, and [p]rocess [w]orker [d]ata" by providing "advanced data collection, automated documentation and analytics capabilities."[11]

**B.      Pepsi Requires Its Workers To Utilize The Vocollect Technology**

32.     Pepsi operates various distribution centers across the state of Illinois, including in Chicago, Illinois where Plaintiff worked.

33.     At each of these distribution centers, Pepsi requires its pickers to use the Vocollect Technology, which Pepsi purchased, procured, or licensed from Honeywell.

34.     Pepsi includes a "Realistic Job Preview" video in its job postings for the Picker position that heavily features the Vocollect Technology.[12]  In describing the Picker job duties, the video says at 0:44: "[t]he orders come in and we have a headset, or a 'Talkman', that lets us know exactly what the store ordered."

35.     As is clear from the video, the headset and mobile device Pepsi employees are asked to retrieve are the Vocollect Technology at issue here:

---

[11] VOICE PICKING, https://sps.honeywell.com/us/en/software/productivity/order-picking-fulfillment/voice-picking.

[12] PEPSI WAREHOUSE LOADER VIDEO, https://vimeo.com/486898339.





36.     Similarly, in another video, Pepsi employees discuss that the headset—which is clearly a piece of Vocollect Technology—"gives you the pro[m]p[t]s and the instructions"[13]:





---

[13] A DAY IN THE LIFE OF A WAREHOUSE LOADER, https://youtu.be/gdc9yGIDjoo?t=42.

37.    In order to log into their Vocollect Technology, employees repeat a password.  As outlined above, the Vocollect Technology is not just matching the password up to what is being said (*i.e.*, whether the password phrase is correct), but *who* is saying the password (*i.e.*, whether the person saying the password matches the employee's customized voice template).

38.    Employees then confirm their shift assignments with the Vocollect Technology, which again matches the employee's voice to their voice template.

39.    Employees are then provided assignments through the Vocollect Technology, which are requested and confirmed by, again, matching an employee's voice with their voice template.

40.    In essence, therefore, the Vocollect Technology operates like a biometric timeclock system that clocks employees in and out of work, as well as providing assignments.  The only difference is that an employee is identified through their voiceprint, rather than their fingerprint.

41.    Through its use of the Vocollect Technology, Defendant possessed, collected, captured, stored, used, or otherwise obtained biometrics (*i.e.*, Pepsi employees' voiceprints).  Each and every voice template is stored as computer code on an employer's servers through the use of Honeywell software[14]:

---

[14] OPTIMIZE YOUR WORKFLOW PERFORMANCE WITH VOICE, at 4.



```
Connected to IP 127.0.0.1
Please keep quiet for a few seconds.
Please say 0
1.
2.
Noise Sample Done
· ready
· nine   two (r) two (l)   .
· ready  .
· seven   .  zero   .  zero   .
· one   .
```

Using Vocollect SoundSense with a
SoundSense Headset

42.    Pepsi can then manage (and does manage) all of the voice templates it has collected

using the VoiceConsole software.  For instance, the VoiceConsole software allows Pepsi to "see

which users are currently using your voice-enabled devices and the tasks they're running.  You

can also create new user profiles and train users."[15]

---

[15] HONEYWELL VOICECONSOLE, https://sps.honeywell.com/us/en/software/productivity/device-
management/voice-console

43.     Defendant possessed, collected, captured, stored, used, or otherwise obtained the voiceprints (biometrics) of Pepsi's employees throughout the duration of Plaintiff's employment.

44.     Problematically, when Defendant possessed, collected, captured, stored, used, or otherwise obtained the voiceprints (biometrics) of its employees, they failed to do so in compliance with BIPA.  Specifically, Defendant:

> (a)     failed to develop a retention schedule and deletion guidelines for permanently destroying biometrics in violation of BIPA § 15(a);
>
> (b)     failed to delete any biometrics in their possession when the initial purpose for collecting or obtaining the biometrics had been satisfied in violation of BIPA § 15(a);
>
> (c)     failed to inform Pepsi employees in writing that their biometrics were being collected and stored, prior to such collection and storage, in violation of BIPA § 15(b);
>
> (d)     failed to inform Pepsi employees in writing of the specific purpose and length of time for which their biometrics are being collected, stored, and used in violation of BIPA § 15(b); and
>
> (e)     failed to receive a written release executed by the Pepsi employees whose biometrics are being collected, stored, used, and otherwise obtained, prior to such collection, storage, use, and obtention, in violation of BIPA § 15(b).

## III.     Experience of Plaintiff William Hoskin

45.     Plaintiff worked for Pepsi as a picker at one of Pepsi's Chicago, Illinois distribution centers from approximately July 2010 until approximately August 2018.

46.     At the beginning of Plaintiff's employment, Pepsi required Plaintiff to create a voiceprint that could be used in conjunction with the Vocollect Technology.  In order to create this voiceprint, Pepsi required Plaintiff to repeat a range of typical prompts into the Headset.  For example, some standard directions that were recorded were "Ready," "Yes" and "No," "Say

Again," "Next," "Short," "Skip," and "Done."   After about an hour of engaging with the voice recognition software, a voiceprint or template of Plaintiff's voice was created.

47.     If another picker tried to use Plaintiff's Headset after Plaintiff had logged into the Headset with his voiceprint, the Headset would not respond to that other employee's voice.   Indeed, if Plaintiff's voice sounded too different from his voiceprint, the Headset would not respond.   For instance, if Plaintiff was chewing tobacco while he worked, his Headset would not respond to his directions until he stopped chewing the tobacco because the Headset could not match Plaintiff's voice to his Voiceprint.   In addition, as Plaintiff continued to use the Vocollect Technology, his voiceprint was enhanced and modified in order to become more accurate.

48.     Thus, Plaintiff's voiceprint constitutes a "biometric identifier."   740 ILCS 14/10. Further, because Plaintiff's voiceprint was used to identify him, his voiceprint also constitutes "biometric information."   *Id*.

49.     Plaintiff's voiceprint was possessed, collected, captured, stored, or otherwise obtained by Defendant on an electronic database, which Pepsi could access and manage using the VoiceConsole software.   The voiceprint was tied specifically to Plaintiff.

50.     After creating his voiceprint, Plaintiff was required to use his voiceprint to check in and out of work each day, as well as to receive and conduct assignments.   For instance, whenever Plaintiff checked into work in the morning, he would say both his name and his employee ID. When Plaintiff said his name and employee ID, not only were the words checked for accuracy, but his voice was matched up to Plaintiff's voiceprint that was stored in Pepsi's database.   After conducting this exercise, Plaintiff could begin work.

51.     At the time Defendant first possessed Plaintiff's biometrics, Defendant had not developed (and still has not developed) a retention schedule and deletion guidelines for

permanently destroying biometrics possessed through the Vocollect Technology in violation of BIPA § 15(a).

52.     Further, because Defendant did not create a retention and deletion schedule, they failed to delete Plaintiff's biometrics after the end of Plaintiff's employment (*i.e.*, after the initial purpose for collecting or obtaining Plaintiff's biometrics had been satisfied), also in violation of BIPA § 15(a).

53.     In addition, prior to the collection to his biometrics, Defendant never (i) informed Plaintiff in writing that his biometrics were being collected and stored; (ii) informed Plaintiff in writing of the specific purpose and length of term for which his biometrics were being collected stored, and used, and (iii) never received a written release executed by Plaintiff for the collection of Plaintiff's biometrics.  Such acts violated BIPA § 15(b).

54.     By collecting Plaintiff's unique biometrics without his consent, written or otherwise, Defendant invaded Plaintiff's statutorily protected right to privacy in his biometrics and violated BIPA.

## CLASS ALLEGATIONS

55.     **Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All Illinois citizens who worked for Pepsi in Illinois, used the Vocollect Technology in the state of Illinois, and had their biometrics possessed, collected, captured, stored, used, and/or otherwise obtained by Defendant during the relevant statute of limitations period.

56.     **Numerosity:** Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands. The precise number of Class Members and their identities are unknown to Plaintiff at this time but

may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

57.   **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

(a)   whether Defendant collected or otherwise obtained Plaintiff's and the Class's biometric identifiers and/or biometric information without prior consent;

(b)   whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(c)   whether Defendant destroyed Plaintiff's and the Class's biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected;

(d)   whether Defendant properly informed Plaintiff and the Class that it collected, used, stored, and/or otherwise obtained their biometric identifiers and/or biometric information; and

(e)   whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

58.   **Typicality.**  The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, worked at a Pepsi warehouse in Illinois, used the Vocollect Technology, and had his biometrics possessed, collected, captured, stored, used, and/or otherwise obtained by Defendant.

59.      **Adequacy:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class.  Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

60.      **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compliance with BIPA.

## **CAUSES OF ACTION**

## COUNT I
## Violation Of 740 ILCS 14/15(a)

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

63.     BIPA mandates that companies in possession of biometrics establish and maintain a satisfactory biometric retention and deletion policy.  Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometrics; and (ii) delete the biometrics when the initial purpose for collecting or using the biometrics is no longer required.  *See* 740 ILCS 14/15(a).

64.     Any such retention and deletion schedule must be created at the first moment of possession, and not thereafter.  *Mora v. J&M Plating, Inc.*, 2022 IL App (2d) 210692 ¶ 43.

65.     Defendant failed to comply with these BIPA mandates.

66.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

67.     Plaintiff is an individual who had his "biometric identifiers" (his voiceprints) possessed by Defendant, as explained in detail above.  740 ILCS 14/10.

68.     Plaintiff's biometric identifiers were used to identify Plaintiff, and therefore, constitute "biometric information" as defined by BIPA.  740 ILCS 14/10.

69.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA.  740 ILCS 14/15(a).

70.     Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometrics.

71.     Defendant failed to destroy Plaintiff's and the Class's biometrics after the initial purpose for collecting or using the biometrics had elapsed.

72.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA § 15(a)'s requirements for the possession of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT II
### Violation Of 740 ILCS 14/15(b)

73.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

75.     BIPA § 15(b) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information."  740 ILCS 14/15(b) (emphasis added).

76.     Defendant failed to comply with these BIPA mandates.

77.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

78.     Plaintiff and the Class are individuals who have had their "biometric identifiers" (voiceprints) collected and/or captured by Defendant, as explained in detail above.  *See* 740 ILCS 14/10.

79.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

80.     Defendant collected, captured, stored, used, and/or otherwise obtained Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     Defendant never informed Plaintiff, and never informed any member of the Class, in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, used, and/or otherwise obtained, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which Plaintiff's and the Class's biometric identifiers and/or biometric information were being collected, stored, used, and/or otherwise obtained as required by 740 ILCS 14/15(b)(1)-(2).

82.     By collecting, capturing, storing, using, and/or otherwise obtaining Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA § 15(b).

83.     On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA § 15(b)'s requirements for the collection, capture,

storage, use, and/or obtainment of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief; and

(g)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and cost of suit.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: July 25, 2023                          Respectfully submitted,

                                              **BURSOR & FISHER, P.A.**

By: */s/ Joseph I. Marchese*
        Joseph I Marchese

Joseph I. Marchese
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: jmarchese@bursor.com
           mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiff*